UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GARAGE DOOR OF ATLANTA,
LLC, and GARAGE DOOR
PARTNERS, LLC,

Case No. 2:26-CV-324-KCD-KRH

      Plaintiffs,

  v.

METRO GARAGE DOOR, INC.,
L&W INSULATION &
FIREPLACES, LLC, and DERRICK
THOMPSON,

      Defendants,

                              /

## <u>ORDER</u>

Plaintiffs Garage Door of Atlanta, LLC ("GDA") and Garage Door

Partners, LLC ("GDP") feel cheated. After buying assets from two of

Defendant Derrick Thompson's businesses and hiring him to a top post, they

claim he phoned it in and undermined operations at every turn. They

consequently sue Thompson and his companies for a slew of business torts

and breach-of-contract claims. Defendants now move to dismiss the

complaint. (Doc. 15.)[1] Plaintiffs have responded (Doc. 28), making this matter

ripe. For the reasons below, Defendants' motion is **GRANTED in part** and

**DENIED in part**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Here are the relevant facts taken from the complaint, which must be accepted as true at this stage. Plaintiffs are in the garage-door business. (Doc. 8 ¶ 3.) Before bringing this action, "GDA merged with and became a part of GDP." (*Id.* ¶ 4.)

Thompson owned two businesses: Defendant Metro Garage Door, Inc. and Defendant L&W Insulation & Fireplace, LLC. (*Id.* ¶ 11.) Plaintiffs cut a deal with him for a substantial portion of his businesses' assets. (*Id.* ¶ 21.) In return, Thompson received a cash payment, was issued membership interests in GDP, and—importantly—was installed as GDA president for a two-year term. (*Id.* ¶¶ 14, 17, 19-21.) Thompson knew this deal hinged on him working for Plaintiffs. He "repeatedly expressed" his "excitement about his continued involvement in the business." (*Id.* ¶ 20.) He also confirmed that he was "all in" and that he fully intended on serving his two-year term. (*Id.*)

Yet, as Plaintiffs tell it, Thompson turned heel. He encouraged company employees to quit and took lavish vacations on Plaintiffs' dime. (*Id.* ¶¶ 31, 50.) He leaked confidential company information to competitors. (*Id.* ¶ 73.) And he even badmouthed the company to its own clients. (*Id.* ¶ 75.)

But there's more. Just two months into his new gig, Thompson revealed that he had been dealing with significant health issues and "needed major heart surgery." (*Id.* ¶¶ 44, 45.) He ended up undergoing two operations which

sidelined him for months and led him to accomplish much less than expected. (*Id.* ¶¶ 47, 48, 54, 56, 57, 77-79.) Thompson afterward quarreled with Plaintiffs over his return date and decided he would only work part-time. (*Id.* ¶ 79.) Frustrated with these developments, Plaintiffs fired Thompson before his two-year term was up. (*Id.* ¶ 80.)

They now sue Thompson and his businesses for fraud, breach of contract, and several other torts. (*Id.*) Defendants seek to have the complaint dismissed under Fed. R. Civ. P. 12(b)(6). (Doc. 15.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

3

544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

Plaintiffs' complaint is a dud. It kicks things off by naming a defunct entity as a plaintiff, and then it brings a slew of claims that largely lack essential details. The Court tackles the non-existent-entity issue first before diving into the merits.

#### a. GDA is a Non-Existent Entity

Once a merger "becomes effective," Florida law considers "[e]ach merging entity that is not the surviving entity" nonexistent. Fla. Stat. § 605.1026(1)(b). According to the complaint, GDA merged into GDP before this lawsuit. (Doc. 8 ¶ 4.) "Pursuant to th[is] merger, GDA's assets became the assets of GDP[.]" (*Id.* ¶ 6.) And "GDP now stands in the shoes of GDA." (*Id.*) GDA thus ceases to exist and has no business being here.

Yet Plaintiffs insist they have an out. They stress that GDA is still winding up its affairs, and so § 605.0709 allows it to bring legal actions. To be sure, that statute says "[i]n winding up its activities and affairs, a limited liability company . . . may . . . prosecute and defend actions[.]" Fla. Stat. § 605.0709(2)(b)(2). But it is also clear that the statute is strictly speaking about dissolved LLCs—not merging ones.

4

Several of its subsections expressly refer to dissolved entities. The statute is sandwiched between a series of other dissolution-focused sections. *See* Fla. Stat. §§ 605.0701 (titled "Events Causing Dissolution")—605.0717 (titled "Effect of Dissolution"). And Florida's Limited Liability Company Act deals with merging companies—like GDA—in more specific terms elsewhere. *See* §§ 605.1021-1026.

"[R]ules of statutory construction require the [C]ourt to read each statutory provision with reference to the whole Act." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000). And courts "should not be guided by a single sentence or a portion of a sentence, but should look to the law in its entirety." *Trotta v. Lighthouse Point Land Co.*, No. 07-80269-CIV, 2008 WL 11412062, at *4 (S.D. Fla. Sept. 22, 2008); *see also Alabama Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1159 (11th Cir. 2014) ("The court ... is entitled to look, in its effort to arrive at the intention of the Legislature, to other provisions of the same act, to consider its relation to other statutory and constitutional requirements[.]"). The Court cannot read § 605.0709's winding-up provision in a vacuum. The section squarely deals with dissolving entities and not merging companies like GDA.

Absent some other persuasive authority, which has not been provided, the Court agrees that GDA is unable to bring its claims here—regardless of

5

whether it is winding up. So under the facts pled, GDA must be dismissed from this action.

### b. The Fraud Claims

Fraud claims must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025). This requires plaintiffs "plead the who, what, when, where, and how of the allegedly false statements." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1185 (11th Cir. 2025).

Plaintiffs' fraud claims get only halfway there. They allege Thompson fraudulently represented his ability to work as GDA's president given his lurking health problems. And, at best, they say this happened sometime within a roughly four-month span. (Doc. 8 ¶¶ 14, 21.)

It is questionable whether that window is sufficiently specific. *Compare Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015), *United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 790 (11th Cir. 2018), *and Future Media Architects, Inc. v. Ideastream Consumer Prods. LLC*, No. 08-60496-CIV, 2008 WL 11331838 (S.D. Fla. July 21, 2008), *with Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003) (7-month period deemed precise enough), *and U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1226 (11th Cir. 2012).

6

That aside, the complaint fails to tell us *where* Thompson's fraud occurred. Nor does it say whether it happened in person, by phone, or in writing. Given these shortfalls, Plaintiffs' fraud claims lack the specificity needed. *See Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110, 1122 (11th Cir. 2025); *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 796 (11th Cir. 2014) ("The complaint makes other passing references to unnamed physicians speaking about Eisai's products at unspecified dates and locations. These allegations fail to comply with the basic elements of a pleading any fraudulent scheme."); *Centennial Bank v. Noah Grp., LLC*, 445 F. App'x 277, 278 (11th Cir. 2011) (affirming dismissal of fraud claim which did not state the "place of any statements").

### c. The Rescission Claim

Rescission claims "based on alleged fraud" are subject to Rule 9(b)'s heightened pleading standards. *Gen. Star Indem. Co. v. Triumph Hous. Mgmt., LLC*, No. 1:18-CV-1770-TCB, 2018 WL 8949452, at *4 (N.D. Ga. Nov. 9, 2018). Just as above, Plaintiffs' rescission claim falls short. It states nothing with respect to the "where" or "how" of Defendants' alleged fraud. *See Daniels v. Nat'l City Mortg.*, No. 208-CV-743-FTM-29SPC, 2009 WL 2590078, at *2 (M.D. Fla. Aug. 20, 2009); *Eaton v. Onewest Bank, FSB*, No. 8:12-CV-2074-T-EAJ, 2013 WL 12156429, at *3 (M.D. Fla. Feb. 15, 2013).

What is more, this claim omits any indication that Plaintiffs ever canceled the contract. Rescission claims brought under Florida law must allege that the claimant "rescinded the contract and notified the other party." *Advanced Care Pediatrics of Fla. v. DPS PR Realty, Inc.*, No. 8:25-CV-653-KKM-CPT, 2025 WL 2531514, at *2 (M.D. Fla. Sept. 3, 2025); *see also Waterside at Boynton Homeowners' Ass'n, Inc. v. S. Homes of Palm Beach, LLC*, 373 So. 3d 351, 354 (Fla. Dist. Ct. App. 2023). Nowhere does the complaint suggests this occurred, so Plaintiffs' rescission claim must also go. *See Longo v. Campus Advantage, Inc.*, 588 F. Supp. 3d 1286, 1295 (M.D. Fla. 2022); *cf. Metro. Life Ins. Co. v. Liebowitz*, No. 22-11794, 2023 WL 4420366, at *2 (11th Cir. July 10, 2023).

### D. The Breach-of-Contract claims

Breach-of-contract claims must specify "which contractual provisions were breached." *City of Delray Beach v. Sherman Williams Am. Legion, Post 188*, 358 So. 3d 440, 443 (Fla. Dist. Ct. App. 2023). Plaintiffs cannot simply drop a contract in the court's lap and expect it to connect the dots. *See Cruz v. Underwriters at Lloyd's London*, No. 8:14-CV-1539-T-33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014). When that happens, dismissal is appropriate. *Id.*; *see also Whitney Nat. Bank v. SDC Communities, Inc.*, No. 8:09-CV-01788-EAK-TBM, 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010).

8

None of Plaintiffs' breach-of-contract claims identify which specific provisions were infringed. And the Court will not fill in the gaps. So all these claims are dismissed. *See State Farm Mut. Auto. Ins. Co. v. Cochran*, No. 8:25-CV-2265-KKM-NHA, 2026 WL 452460, at \*2 (M.D. Fla. Feb. 18, 2026).

### E. The Breach-of-Fiduciary-Duty Claim

Plaintiffs next allege that Thompson breached his fiduciary duty to GDA while serving as company president. To be sure, such high-level posts generally carry a fiduciary duty. *See Simmons v. USI Ins. Servs., LLC*, No. 8:23-CV-201-TPB-AAS, 2024 WL 946287, at \*3 (M.D. Fla. Mar. 5, 2024); *Preferred Drilling Sols., Inc v. Bonacum*, No. 8:25-CV-806-MSS-CPT, 2026 WL 776202, at \*4 (M.D. Fla. Mar. 19, 2026); *Lupin Atlantis Holdings SA v. Zeng*, No. 23-61621-CIV, 2024 WL 4491993, at \*8 (S.D. Fla. Oct. 15, 2024) ("Florida law recognizes that "[c]orporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation."); *see also Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA 1992).

Yet Plaintiffs' claim relies on the same facts underlying its breach-of-contract counts. "Florida law does not allow a party damaged by a breach of contract to recover exactly the same contract damages via a tort claim." *Bedoyan v. Samra*, 352 So. 3d 361, 366 (Fla. Dist. Ct. App. 2022). Plaintiffs thus need to distinctly allege some "other conduct amounting to an

9

independent tort." *Id.* (citing *Lam v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014)). They cannot double-dip their complaint's factual allegations across contract and tort claims alike. *See Pastor v. Bank of Am., N.A.*, 664 F. Supp. 3d 1365, 1368 (S.D. Fla. 2023); *Balesia Techs., Inc. v. Calvo*, No. 22-CV-62085, 2023 WL 3778271, at *9 (S.D. Fla. Apr. 27, 2023). Given this overlap, Plaintiffs' breach-of-fiduciary-duty claim also fails.

## F. The Injunctive Relief Counts

Plaintiffs bring eight claims seeking either permanent or temporary injunctive relief. Injunctions are remedies, not standalone causes of action. *See, e.g.*, *Costa Regency, L.L.C. v. HSBC Card Servs., Inc.*, No. 8:19-CV-1362-T-33JSS, 2019 WL 2567926, at *4 (M.D. Fla. June 21, 2019); *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015). Such standalone claims are routinely dismissed as improper. *Costa Regency*, 2019 WL 2567926, at * 4. Accordingly, Plaintiffs' permanent-injunction claims must be dismissed and re-pled as requested remedies—not counts. *See Clark v. Ashland, Inc.*, No. 2:13-cv-794-FtM-29MRM, 2017 WL 468213, at *20 (M.D. Fla. Feb. 3, 2017). And insofar as Plaintiffs seek temporary injunctive relief, these requests are "procedurally improper." *Gunder's Auto Ctr. v. State Farm Ins.*, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009); *see also CS Bus. Sys., Inc. v. Schar*, No. 6:17-CV-364-ORL37TBS, 2017 WL 8948373, at *1 (M.D. Fla. Mar. 3, 2017); *Diamond Resorts Int'l, Inc. v.*

10

*Aaronson*, No. 617CV1394ORL37DCI, 2018 WL 735627, at *10 (M.D. Fla. Jan. 26, 2018); *Ward v. Triple Canopy, Inc.*, No. 8:17-CV-802-T-24 MAP, 2017 WL 3149431, at *5 (M.D. Fla. July 25, 2017).

## G. The Tortious Interference Claim

Lastly, Plaintiffs bring a tortious-interference claim loaded with various theories. Several fatally omit details as to which supplier-, client-, or vendor-contracts Defendants allegedly meddled with. *See Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So.2d 821 (Fla. 1996) ("[I]n order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); *cf. On, Inc. v. Caribbean Sports Distrib. LLC*, No. 25-CV-24416, 2026 WL 1469472, at *16 (S.D. Fla. May 26, 2026). Only one theory currently pled is viable.

Plaintiffs claim they were damaged after Thompson encouraged or assisted with two employees leaving GDA for a competing company. And those employees are identified by name. That is enough for now. *See Crom Corp. v. Harvey*, No. 112CV00141SPMGRJ, 2012 WL 13018540, at *9 (N.D. Fla. Nov. 29, 2012); *cf. Seminole Tribe of Fla. v. Times Pub. Co.*, 780 So. 2d 310, 315 (Fla. Dist. Ct. App. 2001). Whether this theory involves at-will employees does not matter. *See McCurdy v. Collis*, 508 So. 2d 380, 383 (Fla. Dist. Ct. App. 1987) ("[A]n action will lie where, as in the instant case, a

11

party tortiously interferes with a contract terminable at will."); *Unistar Corp. v. Child*, 415 So.2d 733, 734 (Fla. 3rd DCA 1982)("The general rule is that an action will lie where a party tortiously interferes with a contract terminable at will."); *see also Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1270 (M.D. Fla. 2016) (dismantling contention that Florida precedent bars tortious-interference claims involving at-will employees). Nor does it matter that Thompson was himself president of the contracting party. Such interference is still actionable when done through "improper means." *Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 895-96 (11th Cir. 2025). Plaintiffs allege exactly that. (*See* Doc. 8 ¶ 236 ("Defendants have intentionally and unjustifiably interfered with those [advantageous] relationships.")); *see also Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304 (M.D. Fla. 2025) (holding tortious interference claim was properly pled where non-stranger was alleged to have committed "unjustifiable and intentional" interference). The tortious-interference claim therefore lives to see another day.

## IV. Conclusion

In sum, counsel needs to go back to the drawing board. Gaping holes litter the complaint, so its claims need to be beefed up or they will be gone for good. Defendants' Motion to Dismiss (Doc. 15) is **GRANTED in part** and **DENIED in part**. Plaintiff Garage Door of Atlanta, LLC, is **DISMISSED**

12

from this action. Counts 1 through 17 of Plaintiffs' Complaint are **DISMISSED without prejudice** to Plaintiffs filing an Amended Complaint within **Fourteen (14) days of this Order**.

**ORDERED** in Fort Myers, Florida on July 8, 2026.

Kyle C. Dudek
United States District Judge