UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GARAGE DOOR PARTNERS, LLC

Plaintiff,

v.

Case No. 2:26-cv-324-KCD-KRH

METRO GARAGE DOOR, INC.; L&W INSULATION & FIREPLACES, LLC; AND DERRICK THOMPSON,

Defendants,

/

# ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff Garage Door Partners, LLC's Amended Complaint. (Doc. 52.) Garage Door has responded (Doc. 63), making this matter ripe. As explained below, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.[1]

## I. Background

Here are the relevant facts taken from the operative complaint, which at this stage must be taken as true. Garage Door sells and installs garage-doors, insulation, and fireplaces. (Doc. 49-4 at 2.) Defendant Derrick

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Thompson owns two businesses: Defendant Metro Garage Door, Inc. and Defendant L&W Insulation & Fireplaces, LLC. (Doc. 49 ¶¶ 5-8.)

Garage Door cut a deal with Thompson for a substantial portion of his business assets. (*Id.* ¶ 19.) Thompson, in turn, received a cash payment, membership interests in Garage Door, and was installed as Garage Door's president for two years. (*Id.* ¶¶ 16, 17, 19.) Thompson assured Garage Door he was up for the job, telling the company he was "all in" and that he saw himself staying on board "even beyond the two-year term." (*Id.* ¶ 17.)

But things weren't as they seemed. Key workers were inaccurately listed. (*Id.* ¶¶ 45-53.) And Thompson didn't turn out to be the leader they'd hoped for. As Garage Door tells it, he leaked sensitive company information to competitors, clients, and staff. (*Id.* ¶¶ 65) He prodded employees to quit. (*Id.* ¶¶ 78, 87, 89-91.) And he refused to sign the forms needed for the company to cash in on six-figure tax credits. (*Id.* at ¶¶ 109-10.)

Here's the kicker. Just two months after the deal, Thompson revealed that he had major health issues and needed surgery. (*Id.* ¶¶ 56, 57, 70.) This sidelined him for several weeks and ultimately led him to seek a lighter schedule. (*Id.* ¶¶ 58, 70, 75, 76, 103-106.) Frustrated with these developments, Thompson was cut loose before his two-year term ended. (*Id.* ¶ 106.)

Garage Door now sues Thompson and his businesses for breach of contract and various torts. (*Id.*) Defendants seek to have the amended complaint dismissed under Fed. R. Civ. P. 12(b)(6). (Doc. 52.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

As discussed below, Garage Door's amended complaint will be cut in half. Its breach-of-contract claims largely survive. But its fraud, breach-of-fiduciary-duty, and tortious-interference claims mostly fail. The Court starts with the contract counts before tackling the torts.

### a. The Breach-of-Contract Claims

Garage Door brings four breach-of-contract claims. Each rests on a separate agreement the parties struck: (1) the Asset Purchase Agreement; (2) the Companies' Restrictive Covenant; (3) Thompson's Restrictive Covenant; and (4) Thompson's Employment Agreement. The Court takes each claim in turn.

#### i. Breach of the Asset Purchase Agreement

Garage Door alleges that Defendants breached the Asset Purchase Agreement in various ways. Defendants counter that two of those theories are time-barred. Any claims under sections 2.15 and 2.19, they argue, fall outside the limitations period. Before discussing the merits, Garage Door insists that Defendants waived this timeliness defense because it wasn't raised in their earlier motion to dismiss. The Court disagrees.

To be sure, parties are generally barred from raising issues in a motion to dismiss when those defenses were "available . . . but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). But all bets are off when the

plaintiff's new complaint alters the theory or scope of the case. *See Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011); *Triton II, LLC v. Randazzo*, No. 18-CV-61469, 2019 WL 1777726, at *3 (S.D. Fla. Apr. 23, 2019) ("[W]hen a plaintiff files an amended complaint which changes the theory or scope of the case, the Defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff.").

Garage Door originally alleged a general breach of the Asset Purchase Agreement without specifying which provisions were violated. (Docs. 8 ¶¶ 116-21; 44 at 8-9.) It has since cured that defect, trimming the claim down to a few specific clauses. *See Laird v. Aetna Life Ins. Co.*, 263 F. Supp. 3d 1231, 1236–37 (M.D. Ala. 2017). That matters. The limitations period Defendants lean on applies to most—but not all—claims arising out of the agreement. (Doc. 49-1 at 7-8.) Until Garage Door named the exact provisions at issue, it was unclear whether the limitations bar applied. Accordingly, Defendants' timeliness argument can be considered. *See TriEst Irrigation, LLC v. Hiers*, No. 7:18-CV-155 (HL), 2022 WL 2118317, at *5 (M.D. Ga. June 13, 2022).

That said, this defense fails on the merits. True enough, these claims weren't expressly raised until July 2026. (Doc. 49.) And the purchase agreement required that Defendants receive notice of any claim within three years of its January 24, 2023, closing date. (Doc. 49-1 at 17-18.) Yet the facts

underpinning these claims have been there all along. They were pled in the original December 2025 complaint, meaning they relate back.

"Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018). A new claim "relates back" to the original complaint's filing date if it arises "out of the conduct, transaction, or occurrence" set out in the first pleading. Fed. R. Civ. P. 15(c)(1)(B). "The critical issue" is notice. *Twyman v. Carnival Corp.*, 410 F. Supp. 3d 1311, 1318 (S.D. Fla. 2019). If the original complaint put the defendant on notice of the claim's basic factual substance, the amended claim survives. *Caron*, 910 F.3d at 1368.

Garage Door's factual allegations are nothing new. Just as before, Defendants are alleged to have improperly listed one worker as an employee despite him being unauthorized to work in the country. (Docs. 8 ¶¶ 35-38; 49 ¶ 45-49.). And they are again alleged to have paid another staff member "under the table" while she was out on disability leave. (Docs. 8 ¶ 41-42; 49 ¶ 52-53.) Garage Door's cards have thus been on the table. Defendants knew from the start that Garage Door took issue with this conduct. So these subtheories relate back to the original complaint and thus are not time-

barred.[2] *See Martin v. Alabama Great S. R.R. Co.*, No. 2:23-CV-00167-MHH, 2024 WL 189007, at *2 (N.D. Ala. Jan. 17, 2024); *Borenstein v. Williams Island Prop. Owners Ass'n, Inc.*, No. 16-25182-CV, 2017 WL 11715889, at *3 (S.D. Fla. Nov. 20, 2017).

Defendants further contend that the section 2.19-theory fails since undocumented aliens may properly be classified as employees. This misses the point. Section 2.19 required disclosure of "a complete and accurate list" of each employee. (Doc. 49-1 at 12-13.) Thompson allegedly admitted that he had erroneously listed this individual as such. (Docs. 49 ¶¶ 45-47; 49-2 at 5.) So regardless of whether undocumented aliens may be properly listed as employees, Garage Door's claim turns on whether *this* specific worker was falsely classified as one. The theory thus survives the day.

Next up is Garage Door's employee-retention-credit (ERC) theory. Section 4.9 required Defendants to apply for an ERC credit with the IRS and pay half of any resulting funds "received or credited to [their] account." (Doc. 49-1 at 17.) The IRS has apparently approved half a million dollars in ERC credits. But that money hasn't been disbursed since Thompson won't sign the required forms.

---

[2] Insofar as Defendants contend that Rule 15's relation-back rule doesn't apply to contractual limitations, they cite no authority supporting that position and precedent in fact points in the opposite direction. *See, e.g.*, *Caron*, 910 F.3d at 1368; *Twyman*, 410 F. Supp. 3d at 1318; *Oro v. Norwegian Cruise Line Holdings Ltd.*, No. 1:19-CV-20964-KMM, 2019 WL 9045103, at *2 (S.D. Fla. Dec. 11, 2019).

Defendants pounce on this. They stress that actual receipt is a condition precedent to their duty being triggered. And since the funds haven't hit their account, they argue, they haven't breached any duty. If only it were so easy. "Florida law is clear that a party, who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong." *Vantage View, Inc. v. QBE Ins. Corp.*, No. 07-61038-CIV, 2009 WL 536546, at *3 (S.D. Fla. Mar. 3, 2009). Defendants thus cannot hide behind their own stonewalling to escape "responsibility to perform under the contract." *Ward v. Branch*, 429 So. 2d 71, 74 (Fla. Dist. Ct. App. 1983); *see also Walker v. Chancey*, 117 So. 705, 707 (Fla. 1928); *Aldora Aluminum & Glass Prods., Inc. v. Poma Glass & Specialty Windows, Inc.*, No. 3:14-CV-1402-J-34JBT, 2015 WL 4092781, at *5 (M.D. Fla. July 6, 2015). It's Thompson's alleged inaction that is freezing the funds. So Defendants can't dodge liability by exploiting their own roadblock.

Finally, Defendants want this claim's accounts-receivable theory tossed on grounds that it fails to specify which provision was breached. Sure enough, Garage Door alleges only that Defendants failed or refused "to forward accounts receivable funds to Garage Door." (Doc. 49 ¶ 139e.) Since Garage Door again fails to plead the precise provision violated, this aspect of the count must be dismissed.

**ii. Breach of Company Restrictive Covenant**

Garage Door brings a separate breach-of-contract claim against Metro and L&W involving a company-specific restrictive covenant. Defendants stress that this claim fails since it rests on Thompson's conduct, "without any factual allegations that he acted" as their agent. (Doc. 52 at 16-17.) Not so. Thompson was their sole shareholder and member. He also allegedly acted on their behalf in ways which breached the contract. That's enough for the companies to be held liable. *See Holt v. USA Out of the Box, Inc.*, No. 25-CV-24915-JB, 2026 WL 2819807, at *3 (S.D. Fla. Sept. 21, 2026).

**iii. Breach of Thompson's Restrictive Covenant**

Garage Door next blames Thompson for violating a separate restrictive covenant. The complaint alleges he opened a competing business, diverted customers, and induced employees to jump ship. Defendants' challenge to this claim is two-fold.

First, they argue the claim fails because Thompson's new venture operates in an entirely different industry. The Court sees their point. The restrictive covenant prohibits Thompson from joining any "competitive business." (Doc. 49-5 at 3.) And it defines this as "the business of sales, repair, service, installation and maintenance of *garage doors*, *insulation*, and *fireplaces*" and "any business that competes, directly or indirectly" in these areas. (*Id.* at 2-3.) Thompson's new business, by contrast, allegedly sells

"man doors." (Doc. 49 ¶ 77.) Neither the covenant's text nor a standard man door is wide enough to drive a truck through. Thompson's new enterprise simply does not qualify as a competitor under the agreement. The non-competition theory of this breach claim is therefore dismissed. *See Edwards Moving & Rigging, Inc. v. Jenkins*, No. 8:19-CV-1004-T-36SPF, 2019 WL 3451485, at *4 (M.D. Fla. July 31, 2019).

The other theories still stand, though. The complaint alleges a legitimate interest justifying the restriction by attaching the covenant itself. (*See* Doc. 49-5 at 2); *Genterra Grp., LLC v. Sanitas USA, Inc.*, No. 20-22402-CIV, 2021 WL 148887, at *5 (S.D. Fla. Jan. 15, 2021). And contrary to Defendants' urging, the amended complaint backs up its diversion and inducement claims with detailed facts. It specifically recalls Thompson referring an identified client "to a different garage door company and provid[ing] him with quotes." (Doc. 49 ¶ 97.) It also recites several examples of Thompson goading personnel into quitting the company. (*Id.* ¶¶ 67, 78-85, 87, 89-91.) There is enough here for these theories to make it to discovery.

**iv. Breach of Employment Agreement**

Finally, Defendants take aim at the breach-of-employment-agreement claim. They argue Garage Door hasn't alleged any damages flowing from Thompson's failure to devote time to the company or his concealing of a conflict of interest. The Court disagrees.

Thompson's conduct allegedly caused Garage Door to create and fill a general-manager position. (Doc. 49 ¶ 61.) Garage Door employees spent "an unplanned and unsustainable amount of time" plugging holes his absence created. (*Id.* ¶ 101.) The company was also unable to rebuild its commercial team. (*Id.* ¶ 102.) That's enough at this stage to plead damages. *See Arch Ins. Co. v. A3 Dev., LLC*, No. 23-CV-23524, 2025 WL 1504176, at *12 (S.D. Fla. May 27, 2025); *Ultimate Fitness Grp., LLC v. Anderson*, No. 18-CV-60981, 2019 WL 8810367, at *3 (S.D. Fla. Mar. 13, 2019).

The same goes for the conflict-of-interest theory. Thompson was obligated to alert Garage Door of any conflicts of interest. The complaint says he secretly bought and paid substantial attention to another business. (Doc. 49 ¶¶ 77, 81, 88, 89.) That these businesses were not competitors doesn't necessarily mean Thompson wasn't saddled with a conflict. *See, e.g.*, *Vickaryous v. Mason Classical Acad., Inc.*, No. 2:21-CV-903-JLB-NPM, 2022 WL 8216876, at *9 (M.D. Fla. Aug. 22, 2022); *Ziehm Imaging, Inc. v. Hoes*, No. CIV.A. 7:07-CV-195, 2009 WL 1560047, at *6 (M.D. Ga. June 2, 2009). This theory thus holds water. *See 777 Partners LLC v. Pagnanelli*, No. 20-20172-CIV, 2022 WL 4597804, at *11 (S.D. Fla. Mar. 16, 2022).

**B. The Fraud Claims**

Fraud claims "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means Garage Door

needs to "plead the who, what, when, where, and how of the allegedly false statements." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1185 (11th Cir. 2025).

Just as before, Garage Door's fraud claims come up short. It claims Thompson falsely said he was "'all in' and ready, willing, and able" to work a two-year term as company president. (Doc. 49 ¶ 116.) But once again, Garage Door fails to say where the misrepresentations occurred or how they were communicated. *See Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110, 1122 (11th Cir. 2025); *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 796 (11th Cir. 2014) ("The complaint makes other passing references to unnamed physicians speaking about Eisai's products at unspecified dates and locations. These allegations fail to comply with the basic elements of a pleading any fraudulent scheme."); *Centennial Bank v. Noah Grp., LLC*, 445 F. App'x 277, 278 (11th Cir. 2011) (affirming dismissal of fraud claim which did not state the "place of any statements"); *Garage Door of Atlanta, LLC v. Metro Garage Door, Inc.*, No. 2:26-CV-324-KCD-KRH, 2026 WL 1965135, at *3 (M.D. Fla. July 8, 2026). Garage Door fails to meet Rule 9(b)'s heightened pleading standard and the fraud claims must be dismissed.

**C. The Breach-of-Fiduciary-Duty and Tortious Interference Claims**

Since both Garage Door's breach-of-fiduciary-duty and tortious-interference claims largely lean on conduct underlying its contract claims, they mostly fail under the independent tort doctrine. Tort claims must "rest on obligations that exist independently of the parties' contractual expectations." *McDowell v. Moore*, 434 So. 3d 738, 750 (Fla. Dist. Ct. App. 2026). Conduct giving rise to a breach-of-contract count thus cannot be the basis for a tort claim. *See, e.g.*, *Atout as Tr. of HHM Land Tr. Dated Oct. 29, 2013 v. Rozanc*, No. 6D2023-2302, 2026 WL 2207239, at *7 (Fla. Dist. Ct. App. July 31, 2026); *Bedoyan v. Samra*, 352 So. 3d 361, 366 (Fla. Dist. Ct. App. 2022).

Garage Door's tortious-interference claim centers on Defendants undermining its relationship with clients, employees, suppliers, and vendors. The fiduciary-duty claim similarly invokes that conduct, along with Thompson's alleged leaking of confidential company information. (*Id.* ¶¶ 145-147.) Because these facts already compose several of Garage Door's contract claims (Doc. 49 ¶¶ 154d-f, 162c-e, 170f-g), they cannot be recycled into tort counts. *See Frutafino, S.A.S. v. Dole Chile, S.A.*, 405 So. 3d 497, 500 (Fla. Dist. Ct. App. 2025); *Invo Fla., Inc. v. Somerset Venturer, Inc.*, 751 So. 2d

1263, 1265 (Fla. Dist. Ct. App. 2000) ("An independent tort requires proof of facts that are distinct from breach of contract.").

That said, the fiduciary-duty claim survives insofar as it also claims Thompson misappropriated company resources. (*See* Doc. 49 ¶¶ 40-41, 145, 147); *Peyton v. Grant*, No. 24-CV-21649, 2026 WL 327936, at *6 (S.D. Fla. Feb. 6, 2026); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1330 (S.D. Fla. 2010); *Williams v. Stanford*, 977 So. 2d 722, 731 (Fla. Dist. Ct. App. 2008). But these claims otherwise fail and are therefore dismissed.

## IV. Conclusion

In sum, all but one discrete theory of Garage Door's contract claims live on. Its fraud, breach-of-fiduciary-duty, and tortious-interference claims, on the other hand, largely fail. Since the amendment deadline has passed and Garage Door has not shown good cause, these counts must be dismissed with prejudice. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009).

Accordingly, Defendants' Motion to Dismiss (Doc. 52) is **GRANTED in part** and **DENIED in part**. Counts 1, 2, and 8 are **DISMISSED with prejudice** in their entirety. Count 3 is **DISMISSED with prejudice** only insofar as its accounts-receivable theory goes. Count 4 is **DISMISSED with prejudice**, save for its misappropriation theory. And Count 6 is **DISMISSED with prejudice** only to the extent it hinges on Thompson

violating section 3 of the restrictive covenant. Counts 3 through 7 otherwise stand.

**ORDERED** in Fort Myers, Florida on October 26, 2026.

Kyle C. Dudek
United States District Judge